IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : Case No.: 7:20-CR-00035 (WLS-TQL) |
| DARREN J. MCCORMICK, | : |
| Defendant. | : |

**ORDER**

Before the Court is Defendant's "Motion in Limine to Dismiss for Outrageous Government Misconduct" filed on November 1, 2021. (Doc. 93.) For the reasons explained herein, the motion is **DENIED**.

**I. PROCEDURAL BACKGROUND**

On September 15, 2020, Defendant was indicted on one count for Possession of Methamphetamine with Intent to Distribute. (Doc. 1.) The Indictment also states that Defendant committed the instant offense after having a final conviction for a serious drug felony. *Id.* This case was previously noticed of a pretrial conference in advance of the August 2021 trial term, but the trial was continued to the November 2021 trial term based on Defendant's motion to continue. (Doc. 58.) After the Parties requested to be placed on the November 2021 trial term, the Court held a pretrial conference and set the jury trial to commence in this case on Monday, November 8, 2021. (*See* Docs. 73 & 84.)

1

Defendant filed the pending motion one week before trial on November 1, 2021[1] asking that the Indictment be dismissed based on outrageous law enforcement conduct. (Doc. 93.) The Government promptly responded on November 2, 2021. (Doc. 95.) At Defendant's request (*see* Doc. 104), an evidentiary hearing was held on Defendant's Motion to Dismiss on November 8, 2021. (*See* Doc. 106.) Defendant called three witnesses: confidential informant Michael Husbands, Investigator Hines Taylor, and Investigator Edward English. The Government called no witnesses but cross examined the Defendant's witnesses.

At the conclusion of the hearing, the Court noted that the Government no longer had a scheduling conflict with the second week of the Valdosta trial term and ordered that this case would be set for jury trial to begin the week of Monday, November 15, 2021. The Court stated that it would resolve the motion to dismiss by Friday, November 12, 2021 and that any supplemental briefs must be filed no later than Thursday, November 11, 2021 at 5:00pm. No supplemental briefs were filed. (*See* docket.)

## II.   FACTUAL FINDINGS

The Court makes the following findings of fact based on the evidence adduced at the evidentiary hearing on November 8, 2021.

Michael Husbands, who was a drug addict, had been working with Defendant since 2018 and had observed Defendant manufacture narcotics dozens of times in the past. At some point, Husbands began receiving packages in the mail for Defendant and delivering these packages to Defendant. Husbands believed the packages to contain narcotics, and he observed

---

[1] The motion is untimely as the Standard Pretrial Order provides that pretrial motions be filed at least fourteen days before the pretrial conference and that all remaining issues "must be raised at the pretrial conference or they may be deemed waived." (Doc. 14 at 4.) Nonetheless, defense counsel explained that he only recently became aware of the need to file the motion, and the Court will therefore resolve it.

2

methamphetamine in at least one of the packages. Husbands was paid for his services to Defendant through narcotics. After being arrested for possession of one of these packages, Husbands agreed to help law enforcement catch Defendant in exchange for a reduced sentence. Husbands first met with Investigator Hines Taylor of Berrien County Law Enforcement ("Law Enforcement") in March 2020, and Husbands agreed to be Taylor's confidential informant. Husbands does not recall signing an agreement, but Taylor testified that Husbands signed an agreement. Taylor was the lead investigator on the case and was being assisted by Investigator Edward English.

On May 8, 2020, Taylor and other members of Law Enforcement went to a post office in Nashville, Georgia where they had been notified that a suspicious package had arrived. Law Enforcement inspected the package by viewing it and shaking it, but they did not open it. Law Enforcement suspected the package to contain narcotics, and the package bore Husband's residential address and an unfamiliar name. Husbands was notified that the package had arrived at the post office and that he could pick it up. Taylor testified that likely on the morning of May 8, 2020, he gave Husbands a recording device to use that day.

Husbands called Defendant and informed him that the package was at the post office and asked Defendant what to do. Defendant instructed Husbands to collect the package and write "Return to Sender" on it and wait for further instructions at home. While Law Enforcement surveilled the post office from outside, Husbands collected the package from the post office but he did not speak to Law Enforcement in-person. Law Enforcement did not tell Husbands that he was being surveilled because they did not want Husbands to reveal their presence to Defendant, and it is not clear whether Husbands knew he was being surveilled.

3

Husbands brought the package home, and Taylor and Husbands spoke on the phone about what to do with the package. Husbands suggested leaving the package in his shed until Defendant asked for it, as was his usual practice with Defendant. But Taylor rejected that suggestion and instead told Husbands to put the package in his trunk and not tell Defendant it was in the automobile. Husbands recalls that Taylor met with Husbands at Husbands' home and that either Taylor or Husbands put the package in Husbands' trunk. But Taylor and English testified that they did not enter Husbands' home, but surveilled from a distance, and that Husbands put the package in his own trunk.[2]

Husbands also testified that on the same day, he and Defendant were speaking on the phone and Defendant asked Husbands to pick him up and drive him into Nashville, GA. Husbands picked up Defendant at his home in Douglas, GA but did not tell Defendant the package was in the trunk. Although the conversation between Husbands and Defendant in the car was presumably recorded, no recordings were admitted into evidence, and it is not clear whether Defendant knew the package was in the vehicle. After the two crossed back into Nashville, GA in Berrien County, the automobile was stopped. English testified that he requested a K9 unit and he believes the K9 unit conducted the stop while Law Enforcement observed. Husbands does not recall a K9 unit or dog being present. Ultimately, the package in the trunk was discovered, and Husbands and Defendant were arrested. Defendant is now charged with possession of the methamphetamine in that package with intent to distribute.

---

[2] It is the province of the Court to make credibility determinations for an evidentiary hearing. *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). The Court has not disregarded Husbands' testimony but notes that Husbands appeared to misremember facts, including his own prior statements, and his credibility and reliability as a witness is questionable for purposes of the resolution of Defendant's motion to dismiss.

### III. DISCUSSION

"Outrageous government conduct is a potential defense that 'focuses on the tactics employed by law enforcement officials to obtain a conviction for conduct beyond the defendant's predisposition.'" *United States v. Cannon*, 987 F.3d 924, 941 (11th Cir. 2021) (quoting *United States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998)). "To establish outrageous government conduct, a defendant must show that law enforcement's techniques violate 'fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment.'" *Id.* (citation omitted). This defense stems from a U.S. Supreme Court decision addressing an entrapment defense where Justice Rehnquist, writing for the plurality, noted that there could one day be a case where "the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction. . . ." *United States v. Russell*, 411 U.S. 423, 431-32 (1973) (finding that *Russell* was not such a case).

However, "[o]utrageous conduct is only a potential defense in this circuit because neither the Supreme Court nor [the Eleventh Circuit] Court has ever found it to actually apply and barred the prosecution of any case based on it." *United States v. Castaneda*, 997 F.3d 1318, 1324 (11th Cir. 2021). By analogy, the Eleventh Circuit Court compared the defense to Sasquatch: "Some claim to have caught fleeting glimpses of it in the remote backwoods of the law, but its actual existence has never been confirmed." *Id.*; *see also United States v. Jayyousi*, 657 F.3d 1085, 1111 (11th Cir. 2011) ("We have never applied the outrageous government conduct defense and have discussed it only in dicta."). Indeed, both counsel in this case agree that there has only been one successful application of the defense in the country. Nonetheless, because

5

it is possible that such a defense could apply and in the interests of justice, the Court has assessed the legal standards of the defense as applied to the facts of this case.

The crux of the defense is whether the government's conduct was so outrageous that it violates "'fundamental fairness, shocking to the universal sense of justice.'" *Cannon*, 987 F.3d at 941 (citation omitted); *Sanchez*, 138 F.3d at 1413 (explaining that the question is whether law enforcement's methods "comport with the Fifth Amendment's guarantee of due process[]"). "Whether outrageous governmental conduct exists 'turns upon the totality of the circumstances with no single factor controlling' and the defense 'can only be invoked in the rarest and most outrageous circumstances.'" *United States v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir. 1984). The defense presents a question of law. *United States v. Edenfield*, 995 F.2d 197, 200 (11th Cir. 1993).

Here, the evidence shows that the crime was almost entirely Defendant's creation. Defendant ordered the package, instructed Husbands to collect the package, and the same day asked that Husbands pick up Defendant and drive him into Nashville, GA, the city where he presumably believed his package was waiting. Law enforcement's involvement consisted almost entirely of surveillance of the crime from a distance, and their only involvement was having Husbands sign a confidential informant agreement in advance, giving Husbands a recording device, and then telling Husbands to put the package in the trunk of the car and, according to Husbands, not tell Defendant the package was in the car. In other words, the evidence shows that Defendant essentially ran the criminal operation with only meager involvement from Law Enforcement. In similar cases in this circuit, the outrageous conduct defense has always been rejected.

In *Edenfield*, the county sheriff and a prominent businessman (the father of the defendants) were "on bad terms." 995 F.2d at 198-99. A friend of the defendants' family approached law enforcement informing them that he had information that defendants were selling cocaine, and he asked that the sheriff pay him $10,000 to be an informant on the defendants. *Id.* at 199-200. The sheriff agreed to pay the informant a total of $13,600 in exchange for his cooperation in catching defendants with at least an ounce of cocaine, "enough for a 'trafficking case.'" *Id.* After the defendant stated that he wanted to purchase half an ounce from a dealer, the informant was given money from the sheriff's department to purchase another half-ounce for himself, and the two went together in the car to purchase the cocaine from another dealer. *Id.* The informant then asked to be dropped off, and afterwards, the defendant was pulled over with the total quantity of drugs in the car. *Id.* Defendants moved for dismissal of their case based on outrageous government conduct, and the district court granted the motion finding that, *inter alia* that the "law enforcement conduct in this case is so egregious as to offend principles of due process." *Id.* But the Eleventh Circuit vacated the district court's order finding that "no government acts violated the Edenfields' due process rights." *Id.* at 200.

Here, Defendant argues that the defense "focuses solely on the conduct of government agents, without regard to the defendant's criminal predisposition,"[3] but the Court is not convinced that this argument is accurate. Although the defense is assessed by focusing on the government's conduct "beyond the defendant's predisposition,"[4] the context of the

---

[3] (Doc. 93 at 4.)
[4] *Cannon*, 987 F.3d at 941.

7

government's conduct and the defendant's prior conduct are relevant factors. In *Edenfield*, the Circuit Court held:

> The evidence showed that for the offenses charged the defendants were "predisposed active participants." . . . The evidence shows defendants used *and distributed* cocaine before the investigation in this case. Equipped with their own, independently acquired knowledge, personal contacts and hardware, defendants started each of the drug transactions mentioned in the federal indictment. The government did not "instigate the criminal activity, provide the place, equipment, supplies, and know-how, and run the entire operation with only meager assistance from the defendants." . . . This case is not one where the government instigated commission of a distribution offense by mere users; these defendants were long-time and admitted distributors. . . . Simply put, nothing about the government's conduct in this case is shocking to the "universal sense of justice" of the due process clause.

*Edenfield*, 995 F.2d at 200-201 (citations omitted).

However, even if the Court were to focus solely on the conduct of Defendant and Law Enforcement on May 8, 2020, the Court still cannot find outrageous government conduct. As to the specific drugs with which Defendant is charged in this case, the evidence shows by a preponderance that Defendant ordered the drugs, Defendant instructed Husbands to collect the drugs, and Defendant intended to receive the drugs from Husbands. Thus, the Court cannot find as a matter of law that Law Enforcement's conduct was so outrageous that it violates the Due Process Clause warranting dismissal of the Indictment. In many similar cases where the defendant was the initiator or even just a willing participant to commit the crime, the indictment has not been dismissed. *See, e.g., United States v. Puett*, 735 F.2d 1331, 1335 (11th Cir. 1984) (rejecting defense where defendant offered to sell fraudulent securities and took many steps in executing the crime charged); *Cannon*, 987 F.3d at 942 (rejecting defense where a confidential informant suggested a robbery and an undercover officer created a fake stash

8

house with drugs inside and offered the defendants a van to use because defendants willingly agreed to commit the robbery and took steps to execute the robbery).

"Merely presenting defendants with a non-unique opportunity to commit a crime, of which they are more than willing to take advantage, does not amount to outrageous government conduct." *Cannon*, 987 F.3d at 942. Furthermore, reverse sting operations are a legitimate means of investigation that rise to outrageous conduct where the government "provides the entire means for its execution, and runs the entire operation with only meager assistance from the defendant." *Puett*, 735 F.2d 1331, 1335 (11th Cir. 1984); *Cannon*, 987 F.3d at 942 ("This Court has repeatedly rejected challenges to reverse sting operations . . . and noted that they are 'recognized and useful methods of law enforcement investigation.'") (citation omitted). As other courts have held, "because the government did not initiate the criminal activity, but rather sought to crack an ongoing operation, its conduct was not outrageous and did not violate due process." *United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir. 2003) ("The standard is not met when the government merely infiltrates an existing organization, approaches persons it believes to be already engaged in or planning to participate in the conspiracy, or provides valuable and necessary items to the venture.") (citation omitted). Similarly here, Law Enforcement engaged in minimal involvement to catch Defendant with the drugs they believed he had ordered and which Husbands had instructed to be received on his behalf. Their conduct, based on a totality of the circumstances, does not rise to the level of shocking or outrageous.

### IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss based on Outrageous Government Conduct (Doc. 93) is **DENIED**. The Parties shall be prepared to begin the jury trial in this case on Monday, November 15, 2021 at 9:00 a.m. in Valdosta, GA.

**SO ORDERED**, this 12th day of November 2021.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE
UNITED STATES DISTRICT COURT**